UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

TASHA LORMEUS,

      Plaintiff,

v.

HUMANA, INC., a business entity,
and SENIORBRIDGE FAMILY COMPANIES
(FL), INC., a Florida corporation,

      Defendants.
_____/

## COMPLAINT

      Plaintiff, Tasha Lormeus ("Lormeus"), through her undersigned attorneys, files this Complaint against the Defendants, Humana, Inc. and Seniorbridge Family Companies (FL), Inc. (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

      1.    This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

      2.    Jurisdiction is conferred upon this Court by:

          (a)    28 U.S.C. § 1331;

          (b)    28 U.S.C. § 1343; and

          (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

      3.    Venue is proper for the Southern District of Florida because:

          (a)    Lormeus was employed in the Southern District of Florida by the Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b)      Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because Defendant keeps an office for the transaction of its customary business in this district (Humana and Seniorbridge both have offices in Broward County and Palm Beach County, and Defendant Seniorbridge is a Florida corporation).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4.      Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5.      Lormeus resides within this judicial district.

6.      Defendant Humana, Inc. is a business entity which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States.  Defendant Seniorbridge owns and operates offices in South Florida (Broward and Palm Beach) at which for material times Lormeus worked for and her labor benefited.

7.      Both corporate Defendants jointly employed Lormeus as Lormeus was employed by both entities as executives and managers from both companies directed her day-to-day work and also had day-to-day operational control over the business and issues concerning her employment such as her duties, pay, and whether she was non-exempt.  Humana purchased Seniorbridge in or about 2012 or 2013, and thus Humana has successor liability for all overtime from 2013 to the date of purchase, while Seniorbridge has direct liability for the entire time of employment.

8.      Both corporate Defendants paid employees and paid Lormeus and they both have gross annual sales volume that greatly exceeds $500,000 annually, at least for years 2015-18.  Both corporate Defendants have two or more employees engaged in commerce, as they have two or more who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.  For example, in the South Florida location

Defendants have at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce). Further, the Defendants have a team of employees who work in other states and the various employees made long distance phone calls and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate. For example, Lormeus and others at her office (including officehead Kim Miller and regional office manager Marjorie Rigg in the West Palm Beach office) often have telephone conferences with high-level managers who reside and work out of state, including Ruth Ferrago, Christie Catallo, Andy Palacios, and Rachel Koukoulas.

9. Additionally, Lormeus is entitled to individual coverage, as she regularly and recurrently made calls to employees and other offices across state lines and thus she participated in the actual movements of goods or services and commerce across state lines.

10. The Defendants have previously been sued for overtime for people in the same position as Lormeus for which it has been determined that there were willful violations of the FLSA's overtime provisions, for example, *Poggi v. Humana, Inc.*, Case No. 8:17-cv-433-T-24-MAP; 8:17-cv-1234-T-24-JSS and the Department of Labor has recently made the Defendant pay hundreds of thousands of dollars in retroactive wage payments to pay employees who were owed overtime.

11. Numerous employees, including Lormeus, complained about not being paid overtime for overtime hours worked in the positions Lormeus has had in scheduling and recruiting, such as, Talent Acquisition 2, and Scheduling Coordinator. Lormeus complained repeatedly about not being paid for overtime, to Rigg, Ferrago, Koukoulas, and Palacios. Co-workers Tasha Lormeus and Jennifer Betancourt also complained about not getting paid overtime to managers, including some of the ones listed above.

12.     Both corporate Defendants are an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too are the individual Defendants.  The corporate Defendants are each an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.  The corporate Defendants are all enterprises "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.  During all times relevant to this action, all corporate Defendants were an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13.     Lormeus is an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act, and was an employee of all both Defendants because the Department of Labor's regulation clearly sets forth that all three corporate entities found to be joint employers are jointly and severally liable under the FLSA, as follows:

> [i]f the facts establish that the employee is employed jointly by two or more employers, *i.e.*, that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purpose of the Act.  In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act, including overtime provisions . . . .

29 C.F.R. § 791.2(a) (2002).  Lormeus's employment Humana was not completely disassociated with her employment Seniorbridge, as both entities exist together and a inextricably intertwined. Lormeus since 2013 has received communications from both Seniorbridge and Humana and both entities state and claim that they employed her continuously since the purchase (the entity purchased was one that provides home healthcare to individuals who need care.

14.     Lormeus was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.  At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Lormeus performed services for Defendant for which no provision was made to

properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15.     Within the past three (3) years (August 2015 to June 2018), Lormeus worked for the Defendant performing various duties during the week 8:30 – 5:00 p.m. for approximately $19/hr (her pay rate changed over time; it is currently $18.91/hr) but then was required to work on-call from 5:00 p.m. to 8:30 a.m. during the week, and around the clock for the entire 48-hour weekend period:  1) assigning caregivers to clients and related tasks; 2) reviewing and responding to payroll inquiries and related tasks; 3) checking emails as they would come in from other employees, caregivers, and customers and dealing with the issues in those emails; 4) dealing with caregivers that were a "no-show" to the customer's house; and 5) miscellaneous tasks dealing with random issues, such as, the death of a customer, customer taken to hospital, and answering phone calls that is simply a must.  The job entailed such an encroachment of personal time that there were many nights and entire weekends that Lormeus could not leave her desk and thus could not engage in personal pursuits.

16.     Lormeus's duties included doing whatever task the Defendant instructed her to perform (many of which are specifically outlined in the preceding paragraph), but she could not handle the calls and emails that she received during the on-call time.  There were just too many issues that older, sick people have during those hours and days and the business entity providing their care has to maintain communication with the customer to ensure that care that they require is being received.  Unfortunately, the Defendant does not want to pay the employees for providing these valuable services, though a measly $325/wk was paid for the on-call time even though many hours were spent working on-call (often over 40 overtime hours while on the on-call time), and with an overtime rate of approximately $27/hr Lormeus was grossly underpaid.

17.     Lormeus did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18.     Lormeus was only given tasks that were designed to facilitate production work (getting customers care) of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve her exercising independent judgment and discretion on matters of significance.

19.     Lormeus's primary duties were not management.    Lormeus and co-workers Jennifer Betancourt and Tasha Lormeus complained repeatedly about not getting paid overtime, but the high-level managers refused to pay it, misleading Lormeus and the workers into believing that they were not owed any overtime, because those high-level managers did not want to pay overtime and did not want their bonuses and reviews of their performance impacted by increasing wages being paid to production workers.  Eventually, in or about late June 2018, Defendant acknowledged that overtime had to be paid, and offered to pay it, but Lormeus submitted her hours to the Defendant, but the Defendant refused to pay for all the ours worked but rather wanted to pay pennies on the dollar to further insult and take advantage of Lormeus. For example, on one occasion, Marjorie Rigg, in front of John Carmichael instructed Cheryl Toppino to take 27-28 hours of overtime that she worked one week while on call, and delete from her timesheets, because she did not want it paid, and Toppino had to relent and do it to keep her job.

20.     Lormeus did not have any authority to interview, select, and/or train employees. Lormeus did not have any authority to set and adjust the rates of pay and hours of work for any employees.  Lormeus had no authority to direct the work of employees.  Lormeus did not maintain production or sales records at all when she worked for the Defendant, nor did she use

any such records to supervise or control any employee.  In fact, Lormeus does not even know anything about the business's financing or financial success or failure.  It was not her responsibility.  Lormeus knows nothing about the sales numbers or figures, as that was not her responsibility, but rather the responsibility of someone else in higher management.  Lormeus did not supervise any staff.  Lormeus had absolutely no say concerning any of the costs.  For example, concerning wages paid to employees, Lormeus had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.  Lormeus had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills.  Lormeus never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21.     While Lormeus worked for the Defendants, she never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.  While Lormeus worked for the Defendants, she never handled employee complaints and grievances, as that was for the Defendants to do.  Also, Lormeus never disciplined employees, nor did she have the power or authority to do that.  Lormeus did not plan any work for any employee, as there was no work to plan.  Lormeus never determined any techniques to be used by employees to do their job, as she could not tell a laborer how to fix anything.  Lormeus never apportioned work among any employees, as there were no employees who reported to her to whom to apportion work.  Lormeus never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that.   Lormeus had no involvement in controlling the flow and distribution of materials or merchandise and supplies.  Lormeus had nothing whatsoever to do with materials,

merchandise, or supplies or their distribution. Lormeus had no involvement with respect to budgeting.  Lormeus was not involved in reviewing any sort of financial documents or statements of the buildings, and she did not review any such documents, nor was Lormeus supposed to.  Lormeus had no involvement in monitoring or implementing legal compliance measures.  There were no legal issues that Lormeus had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires.  Lormeus simply followed the well-established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

      22.     Lormeus did not do anything that could have resulted in financial losses for the Defendants.  Lormeus did not perform work that was directly related to management or general business operations of Defendants or their customers, because Lormeus did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (data process to keep books and other manual tasks).  Lormeus also did not perform work directly related to the management or general business operations of the Defendants because Lormeus did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.  Rather, Lormeus was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of assisting getting spaces leased and property maintained.

23.     In the course of employment with Defendant, Lormeus worked the number of hours required of her, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24.     Lormeus regularly worked in excess of forty (40) hours per workweek.

25.     The Defendant is not going to have accurate records of hours worked, because it required hours worked off of the clock and/or kept no records of the hours worked by Lormeus. Lormeus received paychecks stating that the pay was to compensate her for her first 40 hours worked, with no compensation for any of the overtime hours worked.

26.     Lormeus has retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay them a reasonable fee for their services.

27.     Lormeus is entitled to their reasonable attorneys' fees for prosecuting this action, whether or not they are the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28.     Lormeus re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29.     Lormeus is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30.     By reason of the intentional, willful, and unlawful acts of Defendant, Lormeus has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31.     As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Lormeus is entitled to liquidated damages as provided in § 216 of the FLSA, and are entitled to recover damages for three (3) years, and seeks equitable tolling to extend the statute of limitations period back to 2013 when Lormeus

began employment with Defendant, because of the manner in which the Defendant misled and deceived Lormeus into believing that she was not owed overtime, when Defendant knew it was required legally to be paid.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, and going back to 2013, Lormeus demands judgment against Defendants for the wages and overtime payments due her for the hours worked by her for which she has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: _____August 27, 2018_____

                             Glasser & Kleppin, P.A.
                             8751 W. Broward Blvd.
                             Suite 105
                             Plantation, FL 33324
                             Tel. (954) 424-1933
                             Fax  (954) 474-7405
                             E-mail:  ckleppin@gkemploymentlaw.com

                             By:__s/Chris Kleppin_____
                                 Chris Kleppin
                                 Fla. Bar No. 625485